# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| ROSHAY LAVOY HOCKER | § | |
| | § | |
| V. | § | A-13-CV-056 LY |
| | § | (A-10-CR-347(1) LY) |
| UNITED STATES OF AMERICA | § | |

## REPORT AND RECOMMENDATION

TO: THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

Before the Court are: Roshay Lavoy Hocker's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 97), the Government's Response to Petitioner's Motion to Vacate, Set Aside or Correct Sentence (Dkt. No. 202), and Petitioner's Reply (Dkt. No. 204).

## I. GENERAL BACKGROUND

Hocker was the organizer and leader of a counterfeit check operation that was operated in the Western District of Texas. *See* Factual Basis (Dkt. No. 58). Hocker used his home computer and related equipment to produce counterfeit checks and used accomplices to pass the majority of the counterfeit checks. *Id.* On July 22, 2010, Hocker pleaded guilty, without a plea agreement, to a 27 Count Indictment that charged him with conspiracy to make, utter and possess counterfeit checks, in violation of 18 U.S.C.§ 371 (count one); uttering or possessing forged or counterfeit checks and aiding and abetting, in violation of 18 U.S.C. § 513(a) and 18 U.S.C. § 2 (counts two

through twenty); bank fraud and aiding and abetting, in violation of 18 U.S.C. § 1344 and 18 U.S.C. § 2 (counts twenty-one through twenty-three); counterfeiting obligations, instruments or writings, in violation of 18 U.S.C. § 493 (counts twenty-four and twenty-five); and possession of counterfeit implements and possession of a counterfeit security of an organization, in violation of 18 U.S.C. § 513(a) (counts twenty-six and twenty-seven). The indictment also gave Hocker notice of the government's demand for forfeiture of Hocker's right, title and interest in counterfeit paraphernalia, namely: (a) one (1) Dell PCU Computer Model #DHS, Serial Number DGLL621; (2) one (1) Hewlett Packard Model #C3916A Laser Jet Printer, Serial Number JPHK016930; and (3) one (1) Hewlett Packard Model 9600 Desk Jet Printer, Serial Number MY2261D062.

On October 20, 2010, the District Court sentenced Hocker to a 180-month term of imprisonment (concurrent sentences of 60 months of imprisonment on the conspiracy count, 120 months on each of the counterfeiting counts, and 180 months each on the bank fraud counts), followed by a five-year term of supervised release, and ordered Hocker to pay a $2,700 mandatory assessment fee. The District Court also ordered Hocker to make restitution in the amount of $54,106.48 and an order of forfeiture.

Hocker filed a direct appeal of his conviction and sentence, which the Fifth Circuit denied on August 4, 2011. *See United States v. Hocker*, 435 Fed. App'x. 398 (5th Cir. 2011), *cert. denied*, 132 S.Ct. 1120 (2013). On January 23, 2013, Hocker filed the instant Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, arguing that he was denied the effective assistance of counsel.

## II. STANDARD OF REVIEW

Under § 2255, four general grounds exist upon which a defendant may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. The nature of a collateral challenge under § 2255 is extremely limited: "A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If the error is not of constitutional or jurisdictional magnitude, then the movant must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). As the Supreme Court has explained, the reason for these rules is that "a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).

Defendants have a constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). Ineffective assistance of counsel claims are properly brought as § 2255 motions. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). In order to succeed on an ineffective assistance of counsel claim, a petitioner must prove that (1) his "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687. In determining whether performance was deficient, counsel's actions are judged by a "reasonableness" standard, founded on prevailing professional norms. *Id.* at 688.

Courts are highly deferential to counsel, indulging a "strong presumption" that "conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. When the validity of a guilty plea is at issue, conclusory allegations of ineffective assistance of counsel fail to refute a defendant's testimony given under oath. *Montoya v. Johnson*, 226 F.3d 399, 406 (5th Cir. 1998).

A petitioner must also show prejudice. To do so, he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland.* at 694. When a petitioner has pleaded guilty, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### III. ANALYSIS

Hocker argues that his attorney denied him the effective assistance of counsel in violation of the Sixth Amendment by: (a) failing to properly advise him regarding pleading guilty to Counts 21 through 23 of the Indictment; (b) failing to negotiate a plea agreement without an admission or plea to Counts 21-23, and/or an agreement to a specific sentence or a sentence within the advisory guideline range; (c) failing to make a multiplicity argument; and (d) failing to challenge the guideline calculations and sentencing enhancements.

**A.      Hocker's Plea to the Bank Fraud Counts**

Counts 21-23 of the Indictment charged Hocker with bank fraud and aiding and abetting, in violation of 18 U.S.C. § 1344 and 18 U.S.C. § 2. Hocker argues that his attorney failed to advise him that he had a valid defense to Counts 21-23 since "there was no scheme to defraud a bank, nor was there any evidence offered that any bank was placed at risk of civil liability." Hocker's Motion

at p. 5. Thus, Hocker argues that his attorney should have advised him to plead not guilty to Counts 21-23 of the Indictment.

Hocker's claim is without merit. Counts 21-23 of the Indictment charged, in part, that Hocker executed a scheme:

    (a)    to defraud the following financial institutions; or

    (b)    to obtain money, funds, credits, securities or other property owned by or under the custody of control of a financial institution, by means of false and fraudulent pretenses, representations or promises.....

Indictment, at p. 13. The Indictment then described the specific facts surrounding the submission of the three counterfeit checks. The elements of bank fraud under 18 U.S.C. § 1344 are that the defendant knowingly executed or attempted to execute a scheme or artifice (1) to defraud a financial institution or (2) to obtain any property owned by, or under the custody or control of a financial institution by means of false or fraudulent pretenses, representations or promises. *U.S. v. Odiodio*, 244 F.3d 398, 401(5th Cir. 2001). The government must also "demonstrate that the defendants placed the financial institution at risk of civil liability *or* financial loss and that the bank was insured by the Federal Deposit Insurance Corporation." *United States v. McCauley*, 253 F.3d 815, 820 (5th Cir. 2001) (emphasis added). "It is not necessary, however, for the government to prove that banks actually suffered civil liability or financial loss in order to obtain bank fraud convictions." *Id*. (*citing United States v. Waldrip*, 981 F.2d 799, 806 (5th Cir. 1993)). Thus, a § 1344 prosecution does not hinge on a showing of actual loss; rather, the government need only demonstrate a risk of loss.

Here, Hocker exposed the banks to a risk of financial loss by presenting numerous forged checks to those banks. "[K]nowingly cashing bad checks can demonstrate an intent to defraud a bank because this behavior exposes the bank to a significant a risk of financial loss." *United States*

*v. Antonelli*, 234 F.3d 1274, 2000 WL 1205993, at * 2 (7th Cir. 2000); *United States v. Barakett*, 994 F.2d 1107, 1111 (5th Cir. 1993) (holding that deposits of forged checks exposed banks to risk of loss even though they recovered the funds), *cert. denied*, 510 U.S. 1049 (1994).[1] Accordingly, there was sufficient evidence to support his conviction under 18 U.S.C. § 1344. Thus, his attorney was not ineffective for failing to advise him that he had a valid defense.

In addition, Hocker's Plea was knowing and voluntary. A guilty plea must be knowingly, voluntarily, and intelligently made to be constitutionally valid. *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). The record shows that Hocker's plea was made freely and voluntarily, with a clear understanding of the charges against him. At his rearraignment, Hocker acknowledged that he committed Counts 1-27 and that he knew he was pleading guilty because he committed all of the elements of those offenses. See p. 8-9, 18-20, 32. Hocker also agreed to the Factual Basis which explained in detail his check counterfeiting scheme. A defendant ordinarily may not refute his sworn testimony given at a plea hearing while under oath. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir.1998). Declarations made under oath in open court carry a strong presumption of truth, forming a formidable barrier to relief in any subsequent collateral proceedings. *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Hocker did not have a valid defense to the bank fraud counts, and his plea was knowing and voluntary, thus his ineffective assistance of counsel claim fails. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

---

[1] *See also United States v. Saks*, 964 F.2d 1514, 1519 (5th Cir. 1992) (holding that fraudulent loan transaction exposed financial institutions to risk of loss even though loan was secured); *United States v. Lemons*, 941 F.2d 309, 316 (5th Cir. 1991) (finding risk of loss to bank from forged endorsed check even though bank suffered no harm); *United States v. Church*, 888 F.2d 20, 23-24 (5th Cir. 1989) (affirming bank fraud conviction for fraudulent overdrafts although "plan was no more likely to succeed than a request that the Bank exchange monopoly money for its face value in U.S. currency").

**B.     Lack of Plea Agreement**

Hocker next argues that his attorney denied him the effective assistance of counsel because he failed to negotiate a plea agreement that did not include an admission to Counts 21-23, and/or an agreement to a specific sentence or a sentence within the advisory guideline range. The problem with this argument is that the Government was not willing to enter into a plea agreement in this case or to agree to a lesser sentence. Hocker's counsel stated on the record at the Sentencing Hearing that the Government turned down his offer to "cooperate" with the Government. *See* Sentencing Tr. at p. 8-9. In addition, Hocker's counsel moved for a reduction in his sentence based on acceptance of responsibility, but the Government opposed this reduction. *See id.* at p. 6. Moreover, the Government filed a 25-page Motion for Upward Variance/Departure requesting that the District Court increase Hocker's sentencing range to 180-220 months. *See* Dkt. No. 105. In addition, at the sentencing hearing, the prosecutor stated: "I have from the beginning told [Hocker] and told Mr. Ibbotson that I thought an upward departure in this case was appropriate. I did not want them to be misled in any form or fashion as far as what my intent and what my efforts were to be." Sentencing Tr. at p. 14.

Based upon the foregoing, Hocker cannot demonstrate that his attorney was deficient for failing to achieve the impossible—negotiating a plea agreement the Government was unwilling to give him. Further, even if Hocker could somehow show that his attorney should have done something he did not in this regard, he would be unable to demonstrate that he was prejudiced because he cannot show that the Government would have agreed to any such agreement. Accordingly, this claim is without merit.

C.  **Multiplicity Argument**

Hocker next argues that his counsel was deficient because he failed to argue that his three bank fraud counts (Counts 21-23) were multiplicitous since they all arose from the same scheme. This claim also fails.

"Multiplicity" is charging a single offense in more than one count of an indictment. *United States v. Lemons*, 941 F.2d 309, 317 (5th Cir.1991) (per curiam). "The chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense." *United States v. Swain*, 757 F.2d 1530, 1537 (5th Cir.), *cert. denied*, 474 U.S. 825 (1985). "Moreover, '[w]hether a continuous transaction results in the commission of but a single offense or separate offenses. . . is determined by whether separate and distinct prohibited acts, made punishable by law, have been committed.'" *Id.* at 1536 (quoting *United States v. Shaid*, 730 F.2d 225, 231 (5th Cir.), *cert. denied*, 469 U.S. 844 (1984)).

While Counts 21-23 of the Indictment each charged Hocker with a violation of 18 U.S.C. § 1344, each count involved a different counterfeit check, submitted to a bank on a different day, and at a different bank. Under 18 U.S.C. § 1344, a defendant may be charged in separate counts for each "execution" of the scheme to defraud. *United States v. Lemons*, 941 F.2d 309, 317 n. 5 (5th Cir.1991) (per curiam); *United States v. Poliak*, 823 F.2d 371, 372 (9th Cir.1987), *cert. denied*, 485 U.S. 1029 (1988). Therefore, Hocker's indictment was not multiplicitous. *See United States v. Sirang*, 70 F.3d 588, 595 (11th Cir. 1995) (rejecting multiplicity argument where the court found four checks were four different executions of the bank fraud scheme). Because Hocker's indictment was not multiplicitous, his counsel could not have been ineffective for failing to make that argument.

8

"Counsel cannot be deficient for failing to press a frivolous point" *Sones v. Hargett,* 61 F.3d 410, 415 n. 5 (5th Cir. 1995).

### D. Guideline Challenges and Enhancements

Finally, Hocker argues that his attorney was ineffective because he failed to properly challenge the obstruction of justice enhancement in his case, the Guideline calculations and the upward departure. First, Hocker's counsel did object to the obstruction of justice enhancement, but his objection was overruled by the District Court. Sentencing Tr. at 6- 7. The District Court found that the Government had met its burden by a preponderance of the evidence for the two-level enhancement on obstruction of justice. *Id.* at 18. Similarly, Hocker's counsel did argue that he was entitled to an acceptance of responsibility reduction, but the Government opposed it, and the District Court concluded he was not entitled to the reduction. *Id.* at 7-8, 11-14, and 18.

Regarding his Guidelines calculation, the PSR shows that Hocker was assessed a base offense level of 7 pursuant to U.S.S.G. § 2B1.1(a)(1). Because Hocker was responsible for the intended loss of approximately $65,144.30, his offense level was adjusted upward by 6 points pursuant to U.S.S.G. § 2B1.1(b)(1)(D)(6). Because the fraud was committed against at least 20 people, two points were added pursuant to U.S.S.G. §2B1.1(b)(10)(A)(I), giving Hocker an adjusted offense level of 17. Because Hocker was the leader/organizer of criminal activity that involved five or more participants or was otherwise extensive, four points were added under U.S.S.G. § 3B1.1(a). Two points were assessed pursuant to U.S.S.G. § 3C1.1 because the Court found Hocker obstructed the administration of justice by attempting to intimidate many of his accomplices to not cooperate with law enforcement officials, which gave Hocker a total adjusted offense level of 23.

Hocker had a criminal history category of IV based on 8 criminal history points, stemming from convictions for second degree robbery, theft over $750 but less than $20,000, and state jail felony theft, all in Travis County, Texas. Based on this criminal history category and the adjusted offense level of 23, the sentencing guideline range was 70 to 87 months. However, because the statutory maximum sentence for count one was 60 months, 60 months became the guideline range. The District Court, however, decided that an upward departure was appropriate based on Hocker's recidivism and the fact that he was not likely to discontinue the criminal conduct he had been engaged in all of his adult life. *See* Exhibit E, p. 60-65. The District Court stated the following:

> What I'm looking at is a criminal– is criminal conduct that has gone on all of your adult life and that I see no chance of ceasing unless you are sentenced for a substantial period of time. Therefore, primarily for the reasons stated in the government's motion for upward variance, I will grant that motion and will sign an order to that effect.

Exhibit E, p. 65.

Two final points bear mentioning. First, at the sentencing hearing, Judge Yeakel praised the quality of Hocker's defense counsel's performance:

> Initially, let me observe Mr. Hocker, I think you have been extremely well represented by Mr. Ibbotson here today, who has made every argument that I think is possible to have been made on your behalf and some that I think other people would not have anticipated.

Setencing Tr. at 60. Further, Hocker raised similar arguments in his direct appeal, contending that that "his is an extraordinary case in which both the adjustment for obstruction and an adjustment for acceptance of responsibility should have been applied." *Hocker*, 2011 WL 3360645 at *1. The Fifth Circuit disagreed and affirmed the District Court's sentencing decision, reasoning the following:

> Nothing in the record supports Hocker's contention that the district court mistakenly believed it was precluded from awarding credit for acceptance of responsibility solely

> because the obstruction-of-justice enhancement was applied. The district court weighed all the facts in favor of and against a finding that Hocker deserved a downward adjustment for acceptance of responsibility. Although, under the facts of this case, the district court could have applied such an adjustment based on Hocker's early plea, its decision not to do so was not without foundation, so we will not disturb it.
>
> The district court's sentencing decision in this case was based on findings that Hocker's criminal past, including unscored convictions and similar adult conduct that did not result in convictions, was seriously underrepresented by his Criminal History Score and that Hocker had a very high likelihood of recidivism. These were proper bases for an upward departure. . . The district court specifically found that the sentence it chose advanced the objectives of § 3553(a)(2), such as the need for the sentence to promote respect for the law, afford adequate deterrence, and protect the public from further crimes by Hocker. Accordingly, Hocker has not shown that the district court's decision to vary upward constituted an abuse of discretion. . . . Neither has he shown an abuse of discretion with regard to the extent of the variance, as the degree of departure is well below that of other variances we have upheld.

*Id.* For all of these reasons, Hocker has failed to demonstrate that the guideline calculations were erroneous in his case, and his claim that his attorney was ineffective for failing to argue as much is without merit.

## IV. RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** Roshay Lavoy Hocker's Motion to Vacate, Set Aside or Correct Sentence (Dkt. # 197).

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under section 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c) (1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of the movant's section 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, a certificate of appealability shall not be issued.

## VI. WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations within fourteen days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of

the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 18th day of June, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE